**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES,
    *Plaintiff*,

v.

DAVID TORRES,
    *Defendant.*

No. 3:16-cr-00114 (VAB)

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

David Torres ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). David Torres' Mot. for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c), ECF No. 500 (Jan. 4, 2021) ("Def.'s Mot."); Mem. in Supp. of Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and Section 603 of the First Step Act, ECF No. 503 (Jan. 5, 2021) ("Def.'s Mem.").

The United States (the "Government") opposes his motion. Gov't's Resp. to Def.'s Mot. for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c), ECF No. 510 (Jan. 13, 2021) ("Gov't Opp'n.").

For the reasons set forth below, Mr. Torres's motion for compassionate release is **DENIED**.

### I.    BACKGROUND

On June 7, 2016, a grand jury returned an indictment against Mr. Torres and others, charging Mr. Torres in Count Two of the indictment with conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846. Indictment, ECF No. 12 (June 7, 2016).

On July 5, 2016, Mr. Torres pled guilty to Count Two of the Indictment. Plea Agreement, ECF No. 196 (July 5, 2016).

On October 4, 2018, the Court sentenced Mr. Torres to a term of imprisonment of 170 months, a term of supervised release of five years, and a special assessment of $100. J., ECF No. 450 (Oct. 4, 2018).

On January 4, 2021, Mr. Torres moved for a reduction of sentence under 18 U.S.C. § 3582(c). Def.'s Mot.

On January 13, 2021, the Government opposed Mr. Torres's motion. Gov't Opp'n.

On January 27, 2021, the Court held a telephonic hearing on certain aspects of the motion, but did not conduct a full hearing, as Mr. Torres was unable to connect to the proceeding. Min. Entry, ECF No. 512 (Jan. 27, 2021).

On February 22, 2021, the Court conducted another telephonic hearing on the motion. Min. Entry, ECF No. 514 (Feb. 22, 2021) ("Min. Entry").

That same day, as discussed during the telephonic motion hearing, Mr. Torres filed several documents with the Court under seal, including Bureau of Prisons ("BOP") records, *see* ECF No. 516 (Feb. 22, 2021) ("Medical Records"), and post sentencing documents, *see* ECF No. 518 (Feb. 22, 2021) ("Letter").

## II. STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

A court only may grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

### III. DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) (slip op.) ("[B]ecause [Mr.] Gonzalez – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 976 F.3d at 230, 235-36) (internal citations omitted).

Mr. Torres moves for compassionate release because he "has health issues that put him at an elevated risk of serious COVID-19 complications relative to other inmates without health problems." Def.'s Mem. at 3. He argues that he "has asthma," and "has been evaluated for

3

diabetes," as "he has a family history of diabetes and a diagnosis has not been ruled out." *Id.* at 6. He further argues that he "has a heart murmur, which suggests a problem with one or more of his heart valves," though he notes his medical records "do not indicate significant heart disease." *Id.* He also notes that "[a]s of the date of th[e] submission [of his motion for compassionate release], the BOP report[ed] that there [we]re . . . 204 inmates and 13 staff who ha[d] tested positive for COVID-19" at his facility, Schuylkill Federal Correctional Institution ("FCI Schuylkill"). *Id.* at 3 (emphasis omitted) (citing Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/).[1]

At oral argument, Mr. Torres also represented that he had tested positive for COVID-19 on January 26, 2021. Min. Entry; *see also* Medical Records at 6. According to Mr. Torres's medical records, he was in ten days of medical isolation and, as of February 6, 2021, was "free of any COVID[-]19 symptoms." Medical Records at 6. Mr. Torres also represented that he had recently been diagnosed with chronic obstructive pulmonary disease, or COPD. Min. Entry; *see also* Medical Records at 3-4, 11 (stating on February 19, 2021 that Mr. Torres had COPD).

As to the Section 3553(a) factors, he argues that his "history and characteristics today are different than when he was prosecuted for the offense." Def.'s Mem. at at 11. He notes that he "has not had any disciplinary history while in BOP custody" and "participates in available programming and remains discipline-free" and "has completed several educational programs" while in custody. *Id.* He further notes that he "has already served 46 months of his sentence," and that were he to continue being incarcerated, it is "unlikely [he] would be able to participate in any rehabilitative, educational or vocational programs" at his facility "for a significant period of time," *id.* at 14, especially at his facility, where "prisoners [are] locked down 22-23 hours per day [with]

---

[1] As of the date of this Order, there were 76 active inmate cases, 9 active staff cases, and 503 inmates recovered at FCI Schuylkill. *Id.*

4

no mental health or substance abuse treatment, vocational training, or family visitation," *id.* at 12. He argues that he should be "placed on home incarceration until at least a vaccine is made widely available or it is deemed appropriate for him to work outside the home," and proposes release to the home of his mother in Yonkers, New York, with the financial and emotional support of his mother's husband and the mother of Mr. Torres's children. *Id.* at 14.

The Government opposes Mr. Torres's motion. Gov't Opp'n. The Government "acknowledges the risks of COVID-19 to the general population and especially to those at heightened risk because of specified preexisting conditions," *id.* at 16, but argues that "the mere existence of COVID-19 cases within BOP or even within an institution does not reflect that BOP is incapable of managing the pandemic . . . or otherwise entitle the defendant to relief," *id.* at 17. The Government argues that Mr. Torres "has not shown that his risk of contracting COVID-19 is higher at [FCI Schuylkill] . . . than it would be" on home confinement. *Id.* at 18 (quoting *United States v. Gregor*, No. 19-cr-64-VLB-11, 2020 WL 4696597, at *2 (D. Conn. Aug. 13, 2020)). The Government argues that FCI Schuylkill "has instituted protocols to contain and mitigate the pandemic." *Id.* at 19.

With respect to Mr. Torres's proffered medical condition, the Government argues that Mr. Torres "makes no claim that he has any such condition" that would qualify under Centers for Disease Control and Prevention ("CDC") guidelines as increasing the risk of severe illness from COVID-19. *Id.* (citing CDC, *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Mar. 5, 2021)). The Government acknowledges that under the CDC guidelines, asthma "may increase the risk for severe illness from COVID-19," but argues that the

5

"extent of [his] [asthmatic] condition is unclear," and the "actual acuteness of his asthma remains somewhat murky." *Id.* at 20 (emphasis removed).

Under the Section 3553(a) factors, the Government argues that the seriousness of Mr. Torres's crime weighs against granting a sentence reduction. *Id.* at 22. The Government notes that Mr. Torres was "responsible for distributing . . . over 30 kilograms of [heroin] in Connecticut," and was aware that "bodies were dropping (overdosing [from heroin])," and "[r]ather than stop dealing . . ., [he] stated he changed the [identifying] stamp on the heroin once he was aware of the overdoses." *Id.* at 22-23 (internal quotation marks omitted). The Government notes that "while on bond in this case, [Mr.] Torres continued dealing heroin and synthetic opioids," and notes further that at sentencing, the Court observed that the fact that Mr. Torres "remained involved in other criminal conduct after his guilty plea . . . raise[d] serious questions for the Court" as to his sentence. *Id.* at 23 (citing Sentencing Tr., ECF No. 452 at 24:8-21 (Oct. 1, 2019)). The Government also notes that the Court has already denied the compassionate release motions of Wilfredo and Bobby Gutierrez, two of Mr. Torres's co-defendants, on the § 3553(a) factors, and argues that "[Mr.] Torres was as criminally culpable – if not more so – than the Gutierrez brothers as their heroin supplier." *Id.* at 24-25.

The Court will address each of the relevant factors in turn.

1. **Exhaustion**

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

The parties agree that the exhaustion requirement has been met. *See* Def.'s Mem. at 2; Gov't Opp'n at 15. Mr. Torres submitted a compassionate release request to the Warden on June 17, 2020, and his request was denied on June 25, 2020. *Id.* As more than thirty days have passed since Mr. Torres submitted his request to the Warden, the Court agrees that the exhaustion requirement has been satisfied and that Mr. Torres's motion is properly before the Court.

**2. Extraordinary and Compelling Reasons**

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85, 89-90 (D. Conn. Apr. 30, 2020) (granting compassionate release where the defendant had a BMI of 40.2, finding that his "severe obesity and sleep apnea put him at increased risk should he contract COVID-19"); *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (slip op.) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in

7

concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Torres argues that his asthma, as well as the fact that he has been "evaluated for diabetes . . . and a diagnosis has not been ruled out," and that he "has a heart murmur," could put him "at significant risk of serious illness or death should he contract the virus, and his medical condition presents extraordinary and compelling reasons warranting release." Def.'s Mem. at 4-6. At oral argument, Mr. Torres also argued that his recent COPD and COVID-19 diagnoses were also extraordinary and compelling reasons for release.

The Government argues that none of Mr. Torres's conditions definitively place him at heightened risk of suffering serious illness should he contract COVID-19 under the CDC guidelines, but only "may" put him at such an increased risk, *see* Gov't Opp'n at 19-20; that his medical records show that the "acuteness of [his] asthma . . . [is] murky," *id.* at 20-21; that his medical records do not establish that Mr. Torres actually suffers from diabetes, but rather only that he is at the bottom of the range of risk for contracting the condition, *id.* at 21; and that while he claims to have a heart murmur, a radiology report in September 2020 "reported no apparent abnormalities," *id.*

As many courts in this District have observed, the CDC's recommendations state only that individuals with moderate to severe asthma may be at increased risk for severe illness from the virus that causes COVID-19, not that they are definitively in a category such that they will be at an increased risk. *See United States v. Clark*, No. 3:19-cr-110 (JAM), 2021 WL 71438, at *2 (D. Conn. Jan. 7, 2021); *see, e.g.*, *United States v. Epps*, No. 18-cr-19 (JBA), 2020 WL 7332854, at *1 (D. Conn. Dec. 14, 2020) (same); *United States v. Henderson*, No. 3:19-cr-00030 (VLB), 2020 WL 7321403, at *5 (D. Conn. Dec. 11, 2020) (same, and denying compassionate release where

8

there was "no indication that [the defendant's] asthma was 'moderate to severe'"); *United States v. Heaphy*, No. 3:17-cr-00168 (JAM), No. 3:18-cr-00032 (JAM), 2020 WL 5633285, at *3 (D. Conn. Sept. 21, 2020) (noting that under the CDC guidelines, even if the defendant "could establish he has moderate to severe asthma, it would only signify that [he] might be at an increased risk for sever illness from COVID-19" (internal quotation marks omitted)).

Mr. Torres offers several cases in support of his argument that "[a]sthma has been considered especially significant by courts in this Circuit when making compassionate release decisions during the COVID-19 pandemic." Def.'s Mem. at 4 (collecting cases). In each of those cases, however, the court considered asthma to be an additional risk factor compounding the likelihood of severe illness should the defendant contract COVID-19, rather than the defendant's sole or primary condition of concern. *See United States v. Rodriguez*, No. 17-cr-157 (VEC), 2020 WL 3051443, at *1 (S.D.N.Y. June 8, 2020) (slip op.) (the defendant had asthma but also "suffer[ed] from psoriatic arthritis, an autoimmune disorder for which he is prescribed an immunosuppressant that weakens his body's ability to fight infections"); *United States v. Schafer*, No. 6:18-cr-6152 (EAW), 2020 WL 2519726, at *4 (W.D.N.Y. May 18, 2020) ("Defendant is not just immunocompromised, presenting an increased risk for serious illness from COVID-19 according to the CDC, but he also suffers from . . . asthma, further compounding the seriousness of his medical conditions in the face of COVID-19."); *United States v. Park*, 456 F. Supp. 3d 557, 560-61 & n.3 (S.D.N.Y. 2020) (defendant had "a documented history of respiratory issues, including asthma, and immune-compromising diseases," including a prior brain aneurysm, "life-threatening asthma attacks," and lung disease); *United States v. Williams*, 456 F. Supp. 3d 414, 418 (D. Conn. 2020) (defendant had "a history of health problems related to chronic asthma, hypertension, attention deficit hyperactivity disorder, and high cholesterol," had "a history of triple

bypass surgery and . . . his medical providers [we]re considering putting in stents," and "also received a diabetes diagnosis" while in custody); *United States v. Gileno*, 455 F. Supp. 3d 1, 4 (D. Conn. 2020) (defendant "suffer[ed] from chronic asthma and other respiratory issues," including "multiple bouts of pneumonia as an adult," "hyperactive airway disease," "seasonal allergies," and "chronic remitting pain as well as anxiety and depression").

Mr. Torres also argues that "[c]ourts in this Circuit have also granted release where asthma was the only medical condition increasing the defendant's vulnerability to COVID-19." Def.'s Mem. at 5-6 (collecting cases). But many of those cases are readily distinguishable from the facts here. In *United States v. Barajas*, for example, the court granted compassionate release to a defendant who purportedly had an undiagnosed asthmatic condition, but noted that "if the Court were only to consider Mr. Barajas's underlying medical conditions, divorced of the underlying circumstances of this case, he would likely not meet Section 3582(c)(1)(A)'s demanding standard." No. 18-cr-736 (NSR), 2020 WL 3976991, at *9-10 (S.D.N.Y. July 13, 2020) (slip op.) (citing *United States v. Leon*, No. 15-cr-877 (PAE), 2020 WL 3100593, at *2 (S.D.N.Y. June 11, 2020) (noting that although "asthma undoubtedly presents risks related to COVID-19," the defendant was "young and does not have other health conditions that compound that risk"); *United States v. Thaher*, No. 17-cr-302-3 (KPF), 2020 WL 3051334, at *5 (S.D.N.Y. June 8, 2020) (denying motion for compassionate release where defendant was "35 years old" and only cited "his elevated cholesterol level as an additional cause for concern" but not that the BOP was unable to manage his condition). Instead, the court noted that it was primarily concerned with the defendant's "recent COVID-19 diagnosis and the highly disturbing circumstances surrounding it," including that "[t]hroughout the month of May, Defendant repeatedly reported that he was

10

experiencing hallmark COVID-19 symptoms," but the staff "appeared to minimize his symptoms as nothing more than a common cold or dehydration." *Id.* at *9-10.

In another case, the record showed that the defendant's asthmatic condition was very severe and worsening during his time in custody. *See, e.g.*, *United States v. Echevarria*, No. 3:17-cr-44 (MPS), No. 3:06-cr-269 (MPS), 2020 WL 2113604, at *2 (D. Conn. May 4, 2020) (slip op.) (granting compassionate release where the medical records showed that the defendant's asthma was "worsening . . . over the past 2 weeks," and the Government agreed that the BOP had "designated [the defendant] as an inmate with medical conditions that require monitoring"). Another case cited by Mr. Torres, an April 2, 2020 decision, appears to rely on out-of-date March 2020 information from the CDC reporting that persons with asthma are definitively at high risk of serious illness if they contract the disease. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 303-04 & n.2 (S.D.N.Y. 2020).

To the contrary, many courts in this District have found, particularly where the defendant's asthma is well-controlled and the defendant did not show that he suffered from any accompanying high-risk conditions, that the extraordinary and compelling circumstances prong was not satisfied where the defendant suffered from asthma. *See, e.g.*, *United States v. Newton*, No. 3:18-cr-0022-8 (VLB), 2020 WL 6784267, at *6 (D. Conn. Nov. 18, 2020) ("[T]he Court agrees with Warden Easter that Mr. Newton's obesity and controlled asthma does not establish[] 'extraordinary and compelling reasons' for his release, particularly in view of the comprehensive health care that he is receiving, his age, and the state of the virus at [his facility]."); *United States v. Strong*, No. 3:18-cr-00163 (AWT), 2020 WL 7189890, at *3 (D. Conn. Dec. 7, 2020) (denying motion for compassionate release where "[t]he defendant's asthma . . . appears to be well-controlled" and his medical "records provide no other indication that his condition is unmanageable"); *United States*

11

*v. Mazzo*, No. 3:17-cr-136, 2020 WL 3410818, at *3 (D. Conn. June 22, 2020) (slip op.) (denying motion for compassionate release even where the defendant suffered from "asthma serious enough that he requires the use of multiple inhalers" because the defendant "d[id] not have other risk factors: he is under 40 and he does not have other high-risk medical conditions," and the "medical records show that the Bureau of Prisons is managing his conditions, which weighs against finding extraordinary and compelling circumstances" (citations omitted)).

As to Mr. Torres's COPD, the CDC has recognized COPD as one of the conditions that places "[a]dults of any age . . . at increased risk of severe illness from the virus that causes COVID-19." CDC, *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021).

As to Mr. Torres's previous COVID-19 diagnosis, while some district courts deciding the issue have concluded a previous diagnosis of COVID-19 is not an extraordinary and compelling reason for release, several courts have held the other way. *Compare, e.g.*, *United States v. Williams*, No. 3:11-cr-172 (VLB), 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) (denying compassionate release where the defendant "successfully weathered a previous infection without the need for hospitalization and without any apparent lasting effects," and collecting cases in which courts have declined to find extraordinary and compelling circumstances where a defendant has a prior COVID-19 diagnosis); *United States v. Saunders*, No. 3:19-cr-00167 (VLB), 2020 WL 6507389, at *7 (D. Conn. Nov. 5, 2020) (denying compassionate release where "Mr. Saunders has already demonstrated that the COVID-19 virus is not lethal for him, as he successfully weathered a previous infection[,] [and] . . . has also put forward no evidence that he will or is likely to contract the virus again, or if he did that his condition would be worse now than it was when he contracted the virus previously."); *United States v. Otrosinka*, No. 12-cr-300S, 2020 WL 5628060, at *5

(W.D.N.Y. Sept. 21, 2020) (slip op.) (denying compassionate release to defendant who "fully recovered" from COVID-19, and collecting cases as to same); *United States v. Zubkov*, 460 F. Supp. 3d 450, 454-55 (S.D.N.Y. 2020) (denying compassionate release where defendant had fully recovered from the virus); *United States v. Russo*, 454 F. Supp. 3d 270, 279 (S.D.N.Y. 2020) (denying otherwise meritorious motion for compassionate release where the defendant tested positive for COVID-19 during the pendency of the motion); *United States v. Santiago*, No. 92-cr-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020) (slip op.) ("[A] positive COVID-19 test, even in an individual with risks factors for severe complications or death, [does not] constitute[] an extraordinary circumstance in and of itself."); *United States v. McCollough*, No. CR-15-336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (slip op.) ("[Arguments that the d]efendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities."), *with United States v. Malufau*, 474 F. Supp. 3d 1106, 2020 WL 4218038, at *1 (D. Haw. July 22, 2020) (granting motion for compassionate release where defendant had been previously hospitalized with COVID-19 complications, because "even if he should recover fully from his COVID-19 infection, he could be re-infected and is vulnerable to significant complications because of his risk factors . . . ."); *United States v. Halliburton*, No. 17-cr-20028, 2020 WL 3100089, at *4 (C.D. Ill. June 11, 2020) (slip op.) (finding that a defendant who had contracted COVID-19 remained "at risk of imminent harm" both because of "the very real risk of relapse or reinfection" and because he "also may suffer side effects from COVID-19"); *United States v. Sholler*, 445 F. Supp. 3d 265, 270-71 (N.D. Cal. May 15, 2020) (granting compassionate release to defendant deemed "recovered" from COVID-19 because "[t]he parties agree that it remains unclear whether recovering from COVID-19 renders one immune from new infection").

In *Otrosinka*, for example, the district court concluded that because the defendant had "already had COVID-19 and is now fully recovered," and had "no underlying medical conditions that make him particularly susceptible to severe illness from COVID-19," release on this basis was not warranted. 2020 WL 5628060 at *4–5. Like Mr. Otrosinka, Mr. Torres has also contracted, then recovered from COVID-19, although he has arguably set forth underlying medical conditions that could make him susceptible were he to become re-infected. Unlike the defendant in *Malufau*, however, Mr. Torres does not argue that he experienced severe complications, or required hospitalization, when he contracted COVID-19. 2020 WL 4218038, at *1 (discussing Mr. Malufau's preexisting conditions, including obesity, type 2 diabetes, hypertension, hyperlipidemia, and gout, and noting that he was hospitalized for nine days after testing positive for COVID-19).

With respect to the likelihood of Mr. Torres becoming re-infected, the Centers for Disease Control ("CDC") has reported that, "[t]o date, reports of reinfection have been infrequent." *See* CDC, Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html#:~:text=For%20most%20persons%20with%20COVID,with%20improvement%20of%20other%20symptoms (last updated Feb. 13, 2021) ("Duration of Isolation"). Indeed, as one court in this District has observed, "while COVID-19 re-infection is at least a mathematical possibility, the phenomenon is not widespread." *Saunders*, 2020 WL 6507389, at *7. The CDC has generally advised, as to the scope of immunity once an individual has contracted COVID-19, that "[t]he duration and robustness of immunity to [COVID-19] remains under investigation." *See* Duration of Isolation. Accordingly, "[i]t is the Court's understanding that there is no clear scientific consensus as to how long

14

immunity to COVID-19 may last." *United States v. Graham*, No. 16 Cr. 786-02 (NSR), 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020) (slip op.).

The Court recognizes that there also exist significant factual disputes between the parties as to the severity of Mr. Torres's medical conditions. *See* Def.'s Mem. at 4-6, Gov't Opp'n at 20-21. While Mr. Torres's medical records show that he uses an albuterol inhaler, *see* Bureau of Prisons, Health Services Clinical Encounter, ECF No. 503-4 at 6 (Jan. 5, 2021) ("Suppl. Medical Records"), his records are inconsistent as to the severity of his asthma. On October 21, 2020, Mr. Torres reported that he was "not able to exercise due to his asthma," and reported "wheezing, coughing and night[]time symptoms," *id.* at 6; on September 10, 2020, Mr. Torres reported "poor exercise tolerance," but an exam revealed "no wheezing or crackles" in the lungs, *id.* at 11; on August 5, 2020, Mr. Torres reported "waking up several times per night wheezing," and "shortness of breath when sitting," but that he "exercises when he can . . . [and] does burpees, toe touches, push ups and sit ups without difficulty," *id.* at 14; and on March 12, 2020, Mr. Torres reportedly "denie[d] wheezing, cough, night[]time symptoms of asthma or exercise induced asthma," and reported "running and weight lifting every other day without difficulty," *id.* at 18. Medical records from October 1, 2019, also show that Mr. Torres had "no history of hospitalization for asthma," "ha[d] not used controllers and needs the rescue inhaler several times a month," and that his "only other issue is right elbow pain." Bureau of Prisons, Health Services Clinical Encounter, ECF No. 503-3, at 7 (Jan. 5, 2021).

In any event, because Mr. Torres's motion fails for other reasons, specifically, under the § 3553(a) factors, the Court need not definitively resolve whether Mr. Torres's medical conditions such as his asthma, his apparent risk of contracting diabetes, his unspecified heart murmur, his

15

COPD, and his prior COVID-19 diagnosis, taken together or in isolation, qualify as extraordinary and compelling reasons for a sentence reduction.[2] *See* Def.'s Mem. at 6.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'[ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 453 F. Supp. 3d at 526.

Mr. Torres argues that his "history and characteristics today are different than when he was prosecuted for th[e] [underlying] offense," as proven by the fact that "he has not had any disciplinary history while in BOP custody," he "participates in available programming and remains discipline-free," and "he has completed several educational programs" while in custody. Def.'s Mem. at 11. He argues further that although his offense conduct was "serious and warranted the sentence imposed by this Court, that sentence was imposed without premonition that his incarceration would expose him to a life-threatening illness and the severely restrictive conditions of confinement necessary to protect the inmate population." *Id*. at 13. In his view, his release plan,

---

[2] With respect to diabetes, though the CDC has recognized that type 2 diabetes increases a person's risk of severe illness should that person contract COVID-19, courts in this District have also observed that "the CDC does not identify a 'risk' of diabetes as increasing a person's risk of severe illness." *See, e.g.*, *United States v. Brunstorff*, No. 3:12-cr-00004 (MPS), 2020 WL 6110961, at *3 (D. Conn. Oct. 16, 2020) (slip op.) (denying motion for compassionate release where the defendant allegedly had prediabetes, as "even if [the defendant]'s assertion is true that he may face some risk of developing diabetes, that risk does not appear to increase his risk of severe illness from COVID-19 under the current CDC guidelines"); *see also United States v. Rodriguez*, No. 3:18-cr-00090-7 (JAM), 2020 WL 7321394, at *2 (D. Conn. Dec. 10, 2020) (slip op.) (denying compassionate release where defendant suffered from prediabetes and hypertension in part because "the CDC's current recommendations do not recognize a COVID-19 risk factor related [to] prediabetes"). As to his heart murmur, though Mr. Torres argues that this "suggests a problem with one or more of his heart valves," Def.'s Mem. at 6, he provides no support for this assertion, and his medical records elsewhere report, as recently as September 10, 2020, "normal" "[f]irst and second heart sounds," and "[n]o murmurs, rubs or gallops," Suppl. Medical Records at 11.

which "involv[es] family supervision, financial support, and stable housing, . . . will ensure his safety and enable him to eventually successfully transition into the community." *Id.* at 14.

The Government argues that the sentence imposed by the Court "remains necessary to reflect the seriousness of the offense[], promote respect for the law and provide just punishment for the offense[]." Gov't Opp'n at 24. The Government emphasizes the seriousness of Mr. Torres's crime, noting that Mr. Torres was responsible for the distribution of over 30 kilograms of heroin in Connecticut, and for "routinely meet[ing] [co-defendant Mr.] Gutierrez . . . to supply him with 5,000 to 6,000 baggies" of the drug. *Id.* at 22. The Government notes further that "while on bond in this case, [Mr.] Torres continued dealing heroin and synthetic opioids." *Id.* at 23. The Government also notes that the Court has denied motions for compassionate release filed by Bobby and Wilfredo Gutierrez on the § 3553(a) factors, and that Mr. Torres is "as criminally culpable – if not more so – than the Gutierrez brothers," and "like the Gutierrez brothers, [Mr.] Torres'[s] conduct and criminal record reflects that drug trafficking is what [Mr.] Torres knows and what he does." *Id.* at 25.

The Court agrees.

Here, the § 3553(a) factors weigh against Mr. Torres's release.

Most significantly, Mr. Torres, as part of his underlying offense conduct, "was a source of heroin in the Bronx, New York," Presentence Investigation Report, ECF No. 404 ¶ 8 (Jan. 24, 2018) ("PSR"), and a "significant drug supplier for Bobby and Wilfredo Gutierrez," *id.* ¶ 89. Mr. Torres sold "large amounts of heroin" – at times, "approximately $20,000 to $40,000 dollars' worth of heroin two to three times per week" *id.* ¶ 22 – and he agreed that "the quantity of heroin attributable to him [wa]s more than 30 kilograms." *Id.* ¶ 25. Mr. Torres "operated his own stash house in the Bronx where he reportedly bagged all of his own drugs." *Id.* ¶ 89. This Court also

denied Bobby and Wilfredo Gutierrez's motions for compassionate release on the Section 3553(a) factors. *See United States v. Gutierrez*, No. 3:16-cr-114 (VAB), 2020 WL 4435246, at *5-6 (D. Conn. Aug. 3, 2020) (slip op.); *United States v. Gutierrez*, No. 3:16-cr-114 (VAB), 2020 WL 6260654 (D. Conn. Oct. 23, 2020) (slip op.).

Mr. Torres also has a limited employment history, having worked a combined total of less than a year throughout his life. *See* PSR ¶¶ 68-69. Moreover, he proposes release to Yonkers, New York, *see* Def.'s Mem. at 14, close to the site of his prior criminal activity in the Bronx. *See* PSR ¶ 89.

Mr. Torres's sentence must "reflect the seriousness of the offense, . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Given Mr. Torres's criminal history, which includes repeat offenses for drug-related conduct, the significant amount of drugs involved here, as well as the length of time remaining on his sentence and his limited employment history, among other factors, he is not a suitable candidate for release at this time. *See United States v. Gamble*, 3:18-cr-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (slip op.) (denying motion for release "because Defendant is ill suited for home confinement because of his lengthy criminal history and [because] no conditions [of release] could adequately protect the public"); *United States v. Lopez*, 16-cr-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (slip op.) (denying motion for compassionate release where defendant had sixty-six months left of his sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic").

While the Court notes favorably that Mr. Torres has not had any disciplinary infractions while incarcerated and has completed various programming opportunities afforded to him, these

efforts, while commendable, are not yet sufficient to warrant a finding that his continued imprisonment no longer remains necessary to ensure the safety of the community.

Accordingly, having considered and weighed all of these factors as well as others set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

### IV.   CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of March, 2021.

                                                   /s/ Victor A. Bolden
                                                   Victor A. Bolden
                                                   United States District Judge